**Lucille HERMANN, a Minor, by Ruth Williams, Next Friend, Plaintiff-Respondent,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant.**

No. 30691.

St. Louis Court of Appeals.

Missouri.

April 18, 1961.

Motion for Rehearing and to Modify Opinion, or to Transfer to Supreme Court Denied May 8, 1961.

Donald L. Schmidt, St. Louis, for defendant-appellant.

Jack H. Ross, William L. Mason, Jr., St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This is an action to recover damages for personal injuries arising out of a collision between defendant's streetcar and an automobile in which plaintiff was a passenger. The trial resulted in a verdict and judgment in favor of plaintiff for $2,700, from which defendant appealed.

The collision involved occurred on January 22, 1959, about 5:15 P.M., at the intersection of Grand and Park Avenues, in the City of St. Louis. Park Avenue runs east and west, and Grand Avenue north and south. One Leo Hobson was a friend of plaintiff's husband, as well as a mutual friend of one Jean (last name not given) who cared for plaintiff's baby during working hours. Hobson called for plaintiff at her place of employment, on Washington Avenue, to drive plaintiff to Jean's home, where plaintiff was to call for her child. Proceeding southwardly on Grand Avenue, they came to a stop at Park, in obedience to the traffic light, which was red. Plaintiff testified that Hobson's car was in the inner most or eastern lane of the two southbound lanes, and that it came to rest about three feet to the rear, and slightly east, of another southbound automobile. During the time that they waited for the light to change plaintiff noticed a northbound streetcar stopped on Grand, on the south side of Park Avenue, and observed that the left side of Hobson's car was stopped "pretty close in line with the streetcar." When the traffic light changed to green Hobson's car remained at rest, because the car in front of him "swayed" but did not move forward. The streetcar started forward northwardly, across the intersection, and as it did so it rocked from side to side. According to the plaintiff, the streetcar had proceeded about 75 feet from where it had been stopped, and the front end had cleared Hobson's car, when the middle of the west side of the streetcar hit the east side of Hobson's car, at the rear edge of the front door of the automobile. Later plaintiff observed a scratch about one and one-half feet long on the door, and a dent on the automobile. Plaintiff, seated to the right in the front seat, was thrown sideways and her head struck the right-hand door. The streetcar was not stopped until pursued and caught by Hobson at Market Street, some three or four blocks north of Park Avenue. Plaintiff was the only witness in her behalf as to the occurrence, Hobson being, as plaintiff thought, in Japan at the time of the trial.

Defendant offered a motion for a directed verdict at the close of plaintiff's case, and when it was overruled, introduced evidence in its behalf. John Whitmore, the operator of the streetcar, stated that Hobson had stopped him at Grand and Market and complained that the streetcar had "sideswiped" his automobile at Park Avenue. Whitmore testified that he observed a small dent and a streak of red paint one and one-half or two feet long at the rear of the left front door of Hobson's car, but nothing on the streetcar. He recalled that after the streetcar had proceeded northwardly across the intersection it passed a line of southbound automobiles on Grand and stated that he did not feel any unusual movement, jar or noise. He estimated the overhang of the streetcar from the rail to its outer edge as 25 inches, and said that Hob-

son's car had been stopped three feet west of the west rail of the northbound set of tracks. During his direct examination a drawing of a streetcar was used to elicit testimony from Whitmore regarding the width and seating arrangements, but neither the drawing nor various pictures introduced in evidence by defendant have been included in the transcript or filed in this court. We gather from the testimony of Whitmore that there is a "curve" or "bulge," as he described it, to the streetcar, which at its widest point measures nine feet.

On cross-examination Whitmore agreed that there were a number of other streetcar tracks crossing the intersection at Grand and Park, with rough spots, and admitted that a streetcar would rock and sway depending upon the state of the tracks and other factors. As to whether a streetcar would sway as much as a foot, his answer was "I don't know. Maybe they will. I couldn't say, myself." Asked whether he denied the possibility that his streetcar had rocked and swayed, and came in contact with Hobson's car he replied, "No, I don't deny that."

Burns M. Franklin, defendant's superintendent of training of operators, who was a passenger on the streetcar, testified that he heard or saw nothing unusual, and that there was no unusual motion of the streetcar. He stated that the inside rails of the two sets of tracks were each two and one-half feet from the center of the street, so that the intervening distance was five feet; that the overhang of the streetcar was 18 inches; and, upon being properly qualified as to experience, he expressed the opinion that at the location in question, proceeding at a speed of eight miles per hour, the streetcar could not sway more than a couple of inches.

Another witness produced by defendant was Nancy Scott, a passenger, who testified that she was seated next to the window on the west side of the streetcar, in one of the last three seats in the rear; and that immediately after the streetcar crossed Park Avenue she heard a scraping noise, glanced down, and saw an automobile.

Since no question is raised as to the amount of the verdict and judgment it would unnecessarily lengthen this opinion to state the evidence regarding plaintiff's injuries and medical attention.

■ Defendant has raised five points on appeal, the first two of which may be considered together. Plaintiff submitted her case under an instruction in which the negligence hypothesized was that the operator of the streetcar knew or should have known that there was a reasonable likelihood of a collision between the rocking streetcar, as it proceeded forward, and the stopped automobile. Defendant maintains that the court erred in refusing defendant's motion for a directed verdict and in giving plaintiff's verdict directing instruction, because the evidence " * * * completely failed to substantiate a submissible case under plaintiff's theory." Although defendant does not so state, we presume that it refers to its motion for a directed verdict at the close of the case, for, of course, it waived its like motion at the close of plaintiff's case by proceeding with evidence. Snead v. Sentlinger, Mo., 327 S.W.2d 202.

■■ The burden of defendant's argument is that plaintiff's testimony that the left side of Hobson's automobile was stopped "pretty close" in line with the northbound streetcar, then at rest across the intersection, was too speculative and conjectural to support plaintiff's theory that the operator should have known that the streetcar would come in close proximity to the automobile. Defendant ignores that part of its own evidence, and the inferences to be drawn therefrom, which were favorable to plaintiff and consistent with her theory of the case. Its own witness, Nancy Scott, a passenger, testified that as the streetcar proceeded beyond the intersection she heard a scraping sound, looked down, and saw an automobile. Such evidence was

sufficient from which the jury might find that the streetcar came in contact with the automobile. In fact, defendant admits that such contact occurred, for in its brief it states: " * * * The evidence was undisputed between the parties that some contact between the vehicles took place." Plaintiff's evidence that the automobile in which she was seated did not move when the light changed and that it was at rest when struck was uncontroverted. Defendant's operator admitted that he saw the line of stopped southbound cars as he brought his streetcar across the intersection, and admitted that it was rocking. The fact that contact between the vehicles admittedly occurred, under such circumstances, was ample evidence to justify the submission of the case to the jury on plaintiff's theory that the operator knew or should have known that the streetcar would come in close proximity to the automobile and that there was a reasonable likelihood of collision between the two.

■■ Defendant's third point is that the court erred in refusing to give instruction C offered by it. The sole claim made is that this instruction was a proper converse instruction to plaintiff's verdict directing instruction. Instruction C told the jury, in part, that " * * * if you find that the left side of said automobile scrapped (sic) the left side of said streetcar in the area opposite one of the last three seats of said streetcar * * * " then its verdict must be for the defendant. Plaintiff's verdict directing instruction No. 5 required the jury to find that " * * * the left side of the streetcar collided with the left side of the automobile * * * ." A defendant is, of course, entitled to give a converse instruction. As stated in Dell'Aria v. Bonfa, Mo., 307 S.W.2d 479, 480–481, a defendant " * * * may submit the exact converse of plaintiff's submission, Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, or the converse of any one of the elements essential to plaintiff's recovery, McCarty v. Milgram Food Stores, Inc., Mo.Sup., 252 S.W.2d 343, or he can submit facts (sup-

ported by the evidence) which would disprove one or more of the factual elements essential to a recovery by plaintiff. Liebow v. Jones Store Co., Mo.Sup., 303 S.W.2d 660." The refused instruction does not fall within any of these three categories. Under plaintiff's instruction No. 5 the issue submitted was whether any part of the left side of the streetcar struck the automobile. Under defendant's instruction C the jury was told that it should find for the defendant if that part of the left side of the streetcar opposite the last three seats struck the automobile. In so limiting the jury the instruction was erroneous, and the court properly refused to give it. Dell'Aria v. Bonfa, supra; Devoto v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 66.

■■ The next complaint made is that the court erred in refusing to give defendant's instruction D, which read as follows:

"The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in the evidence the streetcar mentioned in the evidence was stopped facing northwardly approximately ten feet south of the south curbline of Park Avenue, and if you find that John Whitmore, the operator of said streetcar, placed the streetcar in motion after the electric traffic signal for northbound traffic turned green, and if you find that the automobile in which plaintiff was riding was stopped facing south astraddle of the southbound streetcar tracks and approximately 3 feet behind an automobile which was stopped with its front end approximately at the north curbline of Park Avenue, and if you find that the automobile in which plaintiff was riding remained stopped as said streetcar started across the intersection and that said automobile in which plaintiff was riding was entirely west of the center of Grand Avenue when the front of said streetcar passed the front of said stopped automobile, and if you find

that John Whitmore did not continue to watch the automobile after the front of said streetcar passed said automobile, and if you find that no part of said streetcar crossed the center line of Grand Avenue, and if you find that the front half of said streetcar passed said automobile without contacting any part of said automobile, and if you find that said streetcar did not rock back and forth as it passed to the east of said automobile, sufficiently to cause said streetcar to collide with the side of said automobile if said automobile remained stopped, and if you find that no act or failure to act on the part of John Whitmore caused the left rear half of said streetcar to come in contact with the left side of said automobile, and if you find that John Whitmore was at all times exercising ordinary care in the operation of said streetcar and was not negligent, under any other instructions submitted to you herein, then in that event, plaintiff is not entitled to recover against the defendant and your verdict should be in favor of the defendant."

It is argued that a defendant has a right to submit a verdict-directing instruction based upon its theory of the case and supported by the evidence. That contention may be conceded, provided always that the instruction is a proper one. The foregoing instruction was not. Aside from being unnecessarily long, complicated and confusing, it failed to require the jury to affirmatively find the essential fact upon which defendant based its defense. The theory of defendant's defense was that the automobile in which plaintiff was a passenger did not remain stopped as the streetcar was passing it; that it started up and moved slightly eastwardly; and that in doing so it scraped the left side of the passing streetcar. There was no direct evidence that the automobile moved, but defendant in effect was asking the jury to infer that it had, based upon defendant's evidence of the position of the automobile, the width of the overhang of

the streetcar, and the limited extent that a streetcar would rock under the circumstances there existing.

■ Since a determination that the automobile had moved was an essential part of defendant's defense, and was a controverted issue, the instruction should have clearly and expressly required the jury to find that it had done so. As was aptly said in a case cited by defendant, Marr v. Marr, Mo.App., 319 S.W.2d 920, 923: "There are at least two essential elements of a good instruction: It must be a proper declaration of law and it must require jury determination of the material and disputed factual controversies." Because of the deficiency stated the instruction was properly refused.

■ During the course of her case plaintiff called to the stand Sylvia Carter, who testified that she was employed in the medical records department of the Missouri Baptist Hospital as assistant medical record librarian; that in answer to a subpoena she had obtained from that department the complete record on plaintiff; that the record was kept in the regular course of the hospital's business; and that to her knowledge the entries therein were made at the time the patient was there and treated. Defendant objected to the admission of the record " * * * as not being properly qualified under the Business Records Act," which objection was overruled. It now complains that the testimony of the witness failed to show that she had supervision and control over the record, and failed to show that the entries therein were made "at or near the time of the act, condition or event," as required by Section 490.680 RSMo 1959, V.A.M.S. There is no merit to these contentions. If the statute inflexibly required that the witness be the custodian we believe Miss Carter's testimony and the inferences to be drawn therefrom were sufficient in that respect, but the section cited actually reads " * * * custodian or other qualified witness * * *." See Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.

2d 663, 55 A.L.R.2d 1022. And while the question propounded to the witness as to the mode of preparation of the record did not follow the exact language of the statute, it was sufficiently similar to satisfy its intent. It was pointed out in Rossomanno v. Laclede Cab Company, Mo., 328 S.W.2d 677, 682, that as to verification and authentication of the type of records covered by the statute, the courts require but slight, if any, further evidence in support of the documents offered than the presumption of regularity that arises from a showing of their source. The trial court must of necessity be given a large discretion in its determination of whether the statutory requirements for admission of the business records have been satisfactorily complied with. There was no abuse of that discretion in this case. Rossomanno v. Laclede Cab Co., supra; Allen v. St. Louis Public Service Co., supra; Fisher v. Gunn, Mo., 270 S.W.2d 869.

 As the concluding part of plaintiff's case, her counsel was permitted to read from the hospital record the following entry made by a Dr. King at the time plaintiff was admitted into the hospital (which counsel apparently paraphrased, in part):

"It says she hit the side of her head and produced severe pain and headache. Since then on, the patient has pain in her neck with movement and between her shoulders. Also has had blurring of vision once in a while, lasting twenty to thirty minutes. No loss of consciousness and no vomiting. Shows her pulse and blood pressure, says head and neck, moderate tenderness over the back of the neck about C–2, 4, 5 region. Compressed sprain of neck. Rule out head injury. Signed, Dr. King."

The objection made at the time was that the admission note was hearsay, not part of plaintiff's complaints, and that it " * * * goes to the cause of the accident * * *."

In its motion for a new trial the defendant limited its complaint of error to that of hearsay. The assignment of error here is that the court erred in permitting the entry to be read " * * * over defendant's objection," but in its argument it refers to the first sentence of the entry as hearsay and as a self-serving statement. Admittedly the admission note, as well as the entire hospital record, was hearsay. But the effect of the Uniform Business Records as Evidence Law, Sections 490.660–490.690 RSMo 1959, V.A.M.S., has been to obviate the objection to hospital records as hearsay, provided they are otherwise qualified under the statute, Allen v. St. Louis Public Service Co., supra; Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663. Of course, the proper qualification of the hospital record as a whole does not necessarily make all parts thereof automatically admissible. But as enumerated in Allen v. St. Louis Public Service Co., supra, among such parts as are admissible are " * * * those parts of the patient's history inherently necessary (or at least helpful) to the observation, diagnosis and treatment of the patient * * *" unless " * * * subject to specific objections such as * * * being self-serving * * *" (285 S.W.2d loc. cit. 667). Whether the disputed entry related to "how plaintiff was injured" rather than to the "cause of the accident," made for " * * * the apparent purpose of furthering the hospital's business of determining the nature and extent and proper treatment of the injury," Melton v. St. Louis Public Service Co., supra, 251 S.W.2d loc. cit. 671, or was " * * * inherently necessary (or at least helpful) to the observation, diagnosis and treatment of the patient * * *," Allen v. St. Louis Public Service Co., supra, 285 S.W.2d loc. cit. 667; or whether as defendant now contends, the passage was a self-serving statement made by the plaintiff to the doctor, Terrell v. Missouri-Kansas-Texas Railroad Co., Mo., 327 S.W.2d 230, the fact remains that no such objection was raised below. And, on appeal, an ap-

pellant may not urge new or different objections to the admission of evidence than those raised in the trial court. Hall v. Clark, Mo., 298 S.W.2d 344; Scott v. Missouri Pacific R. Co., 333 Mo. 374, 62 S.W.2d 834; City of St. Louis v. St. Louis, I. M. & S. R. Co., 248 Mo. 10, 154 S.W. 55.

It is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is affirmed.

RUDDY, (Acting) P. J., WOLFE, J., and JAMES D. CLEMENS, Special Judge, concur.