Filed 7/29/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MACKENZIE BAKER-SMITH, | B282946 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC587234) |
| v. | |
| DROR SKOLNICK et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

Good cause appearing, the opinion in the above entitled matter, filed on July 9, 2019, Certified for Publication, is hereby modified as follows:

On page 10, in the last paragraph and after the sentence ending "based on these facts," insert the following sentences:

We hold the particular excuse Skolnick gave at trial was legally

insufficient to warrant the excuse instruction.  We have no opinion whether new or difference facts would support the instruction at a retrial.

The petition for rehearing is denied.
[There is no change in the judgment.]

_____

BIGELOW, P. J.          STRATTON, J.          WILEY, J.

Filed 7/9/19 (unmodified version)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| MACKENZIE BAKER-SMITH, | B282946 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC587234) |
| v. | |
| DROR SKOLNICK et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Michele E. Flurer, Judge.  Reversed and remanded.

Effres & Associates, Justin Jacob Effres, Esner, Chang & Boyer, and Stuart B. Esner for Plaintiff and Appellant.

Macdonald & Cody LLP, Scott L. Macdonald, and Douglas M. Carasso for Defendants and Respondents.

_____

A flying mattress made Mackenzie Baker-Smith swerve on the freeway and crash at high speed. She sued a company for failing to secure the mattress. The jury ruled against her, but heard an incorrect jury instruction about negligence per se. This doctrine presumes defendants are negligent if they violate a law. A special exception excuses law violations if a defendant can prove it tried but could not comply with the law. Giving that excuse instruction here was error. We reverse and remand.

I

We summarize the case in the trial court. The first essential point is the Vehicle Code requires cargo to be secured to vehicles. We return to this secure-the-cargo law shortly.

A

Baker-Smith was driving on the freeway when a mattress suddenly flew at her car. She veered to avoid it and hit a barrier. Two eyewitnesses chased a truck to get the license number. One called 911 with the truck's description and plate. An officer stopped that pickup, which was towing a trailer. The driver was Dror Skolnick, the owner of G&L Design Building & Landscape, Inc. We refer to Skolnick and G&L collectively as G&L.

Skolnick gave different accounts about a mattress in his trailer.

When he was pulled over, Skolnick told police he was unaware of anything flying out of his truck but admitted there "*may*" have been a mattress in the back. Skolnick was pulling a four-wheel uncovered trailer with seven foot sides. Skolnick opened the trailer's back doors for the officer. There was no mattress. According to the officer, Skolnick added Skolnick "wasn't aware if for sure there was a mattress because the guys he says he works with or works for, do the loading of the vehicle."

At trial, Skolnick's equivocation changed to certainty: there was *no* mattress. Skolnick testified his trailer was "[e]mpty, for sure," that day. Skolnick told the jury he used the trailer to pick up trash a day or two before the crash. At the dump, Skolnick unloaded everything from the trailer and cleaned it with a broom. Then he took it and left it at a job site. A couple days before the crash, Skolnick directed his employee Juan Lopez to put tools in the trailer, but then Skolnick changed his mind and told Lopez to "make sure it's nothing in there." Skolnick said Lopez told him the trailer was empty. Skolnick later retrieved the trailer from the job site because, the day after that, he planned to use the trailer to pick up plants from a nursery. G&L is a landscaping business and Skolnick was buying plants for a job. He towed the trailer to his house, parked it out front overnight, and left for the nursery from his house the next morning, which was the day of the crash.

At trial, Skolnick admitted, on the day of the crash and after police pulled him over, Skolnick said "maybe" his trailer contained a mattress. Skolnick also admitted he did not check his trailer before leaving home that morning, but checking would have been "quick and easy."

Baker-Smith said the mattress came from a white dump truck, while the G&L truck was blue and the trailer was black.

Lopez died before trial.

### B

Baker-Smith sued G&L. The main theory at trial was negligence per se, which is the doctrine that a defendant breaking a law is presumptively negligent. Baker-Smith claimed G&L broke the secure-the-cargo law: Vehicle Code section 23114, subdivision (a) requires vehicles be loaded so contents stay put.

3

Baker-Smith contended G&L broke this law because eyewitnesses saw the mattress leave G&L's vehicle. G&L claimed it did not break this law because the eyewitnesses were wrong: Skolnick never carried a mattress that day, and the eyewitnesses were untrustworthy, so the mattress came from elsewhere. Alternatively, even if the mattress did fly out of Skolnick's trailer, G&L maintained Skolnick was not negligent because he asked Lopez to empty the trailer and Lopez confirmed it was empty, so Skolnick had been diligent and knew nothing about a mattress, which excused him.

C

The focus of this appeal is three jury instructions, which we quote as delivered. All were California Civil Jury Instructions, or CACI, instructions.

Two instructions were about negligence per se: CACI 418 and CACI 420. The third is CACI 400, which is about burden of proof and the elements of negligence generally.

We begin with CACI 418, which states the basic doctrine of negligence per se. This instruction does not mention the burden of proof. In material part, it stated:

"If you decide:

1.      That Dror Skolnick violated [California Vehicle Code section 23114, which requires vehicles to be loaded so as to prevent their contents from escaping] and

2.      that the violation was a substantial factor in bringing about the harm,

then you must find that Dror Skolnick was negligent.

"If you find that Dror Skolnick did not violate this law or that the violation was not a substantial factor in bringing about

4

the harm, then you must still decide whether Dror Skolnick was negligent in light of the other instructions."

The second jury instruction was CACI 420, which we call the "excuse instruction." Again there is no mention of the burden of proof. As given in this case, CACI 420 stated:

"A violation of a law is excused if the following is true: that despite using reasonable care, a person was not able to obey the law."

The third instruction was CACI 400, which set out the essential factual elements of negligence. This instruction does define the burden of proof. We quote it as given, emphasizing the burden-of-proof language:

"Mackenzie Baker-Smith claims that she was harmed by Dror Skolnick's negligence. To establish this claim, *Mackenzie Baker-Smith must prove* all of the following:

1. That Dror Skolnick was negligent;
2. That Mackenzie Baker-Smith was harmed; and
3. That Dror Skolnick's negligence was a substantial factor in causing Mackenzie Baker-Smith's harm." (Italics added.)

No other instruction mentioned burden of proof in connection with the doctrine of negligence per se.

In sum, the court instructed the jury Baker-Smith had the burden of proof. The implication was no burden shifted to G&L about whether its excuse for violating the secure-the-cargo law was valid.

D

Next we recount the first question on the special verdict form, which is important for this appeal:

"1. Was Dror Skolnick / G&L . . . negligent?

5

"If you answered 'Yes,' to question 1, then answer question 2. If you answered 'No' to question 1, stop here, answer no further questions, and have the presiding juror sign and date this form."

The jury answered no to this first question. This no-negligence finding ended the case. But this one question created complete ambiguity about *why* the jury answered no: was it because the jury believed there was no mattress, or because it believed Skolnick had a valid excuse for violating the secure-the-cargo law? One cannot say.

The special verdict form did not include a question specifically asking the jury whether G&L was the source of the mattress. Neither was there a question asking if Skolnick had a valid excuse, if, indeed the jury found he had violated the Vehicle Code.

The court entered a defense judgment. Baker-Smith appealed. We granted her motion to augment the record.

## II

The sole contention on appeal concerns jury instructions. In this situation, we do not view the evidence in a light most favorable to the prevailing party. Rather, to assess the instructions' prejudicial impact, we assume the jury might have believed Baker-Smith's evidence and, if properly instructed, might have decided in Baker-Smith's favor. (*Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1087.) Our review is independent.

Baker-Smith correctly challenges the excuse instruction: CACI 420. The court misinstructed the jury because the facts of this case did not warrant this, or any, excuse instruction. CACI 420 excuses a violation of the law when a person uses reasonable care but is unable to obey the law. Here, there is no evidence

Skolnick used reasonable care to ensure there was no mattress in his trailer and was unable to comply with the secure-the-cargo law. The only evidence was Skolnick asked his coworker to check the trailer to ensure it was empty and the coworker said it was. No evidence showed Skolnick could not obey the Vehicle Code.

An excuse instruction is improper unless special circumstances exist. (*Casey v. Russell* (1982) 138 Cal.App.3d 379, 385 (*Casey*).) As a matter of law, no circumstances were special here.

To determine whether excuse could be a defense in a negligence per se case, California law weighs the benefits and burdens of accident precautions. This has been true since at least 1923. (See *Berkovitz v. American River Gravel Co.* (1923) 191 Cal. 195, 199 (*Berkovitz*) ["it cannot be the intention of the law that a watchman must be maintained over the rear light to observe whether it is constantly burning"].) This approach to tort doctrine meshes with the field's general focus on reducing the social costs of accidents. (E.g., *Escola v. Coca-Cola Bottling Co.* (1944) 24 Cal.2d 453, 462 ["public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products"]; *United States v. Carroll Towing Co.* (2d. Cir. 1947) 159 F.2d 169, 173 (*Carroll Towing*) [defendant's duty is a function of three variables: (1) the probability of an accident; (2) the gravity of the resulting injury, if there is an accident; and (3) the burden of adequate precautions] [Learned Hand, J.]; see also, e.g., *Evra Corp. v. Swiss Bank* (7th Cir. 1982) 673 F.2d 951, 958 ["The amount of care that a person ought to take is a function of the probability and magnitude of the harm that may occur if he does not take care"] [Posner, J.].)

7

Precedent shows when excuse can be a valid defense to negligence per se and when it cannot.

An example of a permissible excuse is *Berkovitz*, where at 2:00 a.m. two couples in a Dodge were breaking the speed limit and then rear-ended a gravel truck going about 10 miles per hour. People in the Dodge sued the truck company, claiming the truck's tail light was out, which violated the law requiring a night light and thus was negligence per se. The truck driver had checked the tail light three or four blocks before the accident scene and saw it working then. (*Berkovitz*, *supra*, 191 Cal. at p. 198.) So the light must have failed in those three or four blocks – just moments before the crash. The Supreme Court ruled that, under these circumstances, the truck company was entitled to an excuse instruction. (*Id.* at pp. 199–200.)

*Berkovitz* permitted the excuse defense because it, in effect, decided the trucker's conduct was efficient. The trucker made sure his light was working just before the accident. There was no other better and yet practical way for the trucker to check his tail light: in 1923, dashboard alerts about failed running lights were things of the future. In that year, the only way the trucker could have been more cautious would have been to maintain a watchman "over the rear light to observe whether it is constantly burning." (*Berkovitz, supra,* 191 Cal. at p. 199.) This watchman notion was obviously preposterous in the court's view. It would have been socially uneconomical. The precaution cost would have been extreme while the accident risk posed by a briefly unlit tail light was small. Under these special circumstances, the *Berkovitz* decision allowed the excuse defense.

An opposite example is *Casey*, which *dis*allowed the excuse defense. There a driver broke the law by failing to honk the horn

8

when approaching a blind curve on a narrow mountain road. (*Casey*, *supra*, 138 Cal.App.3d at p. 385.)  Honking a horn is quick and easy, like checking the trailer before heading for the freeway, while a head-on collision on a mountain curve can be like flying freeway cargo:  very serious.  It is socially efficient for drivers on curves to obey the law and to honk when approaching blind curves, just as it is for drivers to check the trailer.  The *Casey* decision barred the excuse defense on those facts.

The same result obtains here:  no excuse can be allowed. The appropriate calculus shows these circumstances were not special and excuse cannot be a defense for G&L.  (Cf. *Carroll Towing*, *supra*, 159 F.2d at p. 173 [defendant's duty is a function of three variables:  (1) the probability of an accident; (2) the gravity of the resulting injury, if there is an accident; and (3) the burden of adequate precautions].)  When towing a trailer at freeway speeds, it is probable unsecured items like mattresses can fly free.  When that happens, the gravity of the resulting injury is apt to be great.  Items flying towards a windshield at freeway speeds are dangerous.  The same holds for sudden evasive swerving in traffic, as illustrated here.  And the burden of adequate precautions is slight.  Skolnick admitted checking his trailer would have been quick and easy.  Under such lopsided conditions, the circumstances were not special.

Skolnick says he took care to instruct coworker Lopez, who assured Skolnick the trailer was empty.  This is not an excuse. Skolnick could have avoided this hazard at reasonable cost.  As between the parties, Skolnick was the only one who could have done so.  It thus was error to give CACI 420, no matter what Skolnick claimed Lopez told him.  Tort law must confront Skolnick and others like him with the right precautionary

incentive if it is to perform its proper function of minimizing the social costs of accidents.

Moreover, G&L conceded in oral argument that CACI 420, as given in this case, was worded incorrectly. California law forced G&L to concede error, for this excuse instruction failed to explain the burden shifts to the defendant to establish the defendant's excuse. In 1958, Chief Justice Gibson explained people who violate a statute have the burden of proving their conduct was excusable. (*Alarid v. Vanier* (1958) 50 Cal.2d 617, 624 (*Alarid*).) By failing to make that point, the CACI instruction erred.

The *Alarid* view accords with the Restatement Third of Torts (§ 15, com. c, p. 173.). Our Supreme Court has recently stressed the value of the Restatement as a source of California tort law. (See *Southern California Gas Leak Cases* (2019) 7 Cal. 5th 391, 407.)

Under "Sources and Authorities," CACI 420 pinpoint cited this *Alarid* decision and quoted the key language about the burden of proof. But the text of CACI 420 did not explain the burden of proof shifts to the defendant who seeks to use it as a rebuttal to a negligence per se instruction. G&L exploited this error in the corresponding jury instruction by arguing Baker-Smith failed to meet *her* burden of proof.

Because it is equally probable the jury found for G&L on an erroneous excuse theory as it is that jurors found G&L had no mattress, we cannot say these errors were harmless. (*Casey, supra*, 138 Cal.App.3d at p. 386.) We therefore must reverse the judgment and remand the case. (*Ibid.*) On retrial, the court must give neither CACI 420 nor any other excuse instruction based on these facts. It would also be appropriate to include a

10

question on a special verdict form, if one is used again, to isolate the jury's determination about whether G&L did or did not break the secure-the-cargo law.

We have examined the parties' other contentions. G&L's claim that Baker-Smith waived rights by approving the verdict form is incorrect, because she protested the jury instruction at issue. "It would unduly lengthen this opinion" to say more than the parties' other contentions are insubstantial and do not alter our analysis. (*Berkovitz*, *supra*, 191 Cal. at p. 200.)

## DISPOSITION

The judgment is reversed and the case is remanded for a new trial or other appropriate proceedings. Baker-Smith is entitled to costs on appeal.

WILEY, J.

WE CONCUR:


BIGELOW, P. J.


STRATTON, J.

11